38 So.3d 457 (2010)
Toni Swain ORRILL, Individually and on Behalf of the Class
v.
AIG, INC., AIG Consultants, Inc., AIG Com, Inc., AIG Domestic Claims, Inc., d/b/a AIG Claims Services, Audubon Insurance Company d/b/a Audubon Insurance Group, and ABC, DEF and GHI Insurance Companies, Individually, et al.
No. 2009-CA-0888.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 2010.
*458 Madro Bandaries, Edward Moreno, Madro Bandaries, P.L.C., Jeffrey Berniard, Berniard Law Firm, Gregory P. DiLeo, Jennifer B. Eagan, Gregory P. DiLeo, APLC, New Orleans, LA, for Settlement Class.
Fred L. Herman, Law Offices of Fred L. Herman, Stephen J. Herman, Steven J. Lane, Herman Herman Katz & Cotlar, L.L.P., New Orleans, LA, Wiley J. Beevers, Steven M. Mauterer, Michael F. Somoza, Beevers & Beevers, L.L.P., Gretna, LA, J. Robert Ates, Ates Law Firm, APLC, Destrahan, LA, for Scharwath & Roberts (and Appellants Herein).
Darren A. Patin, Richard T. Simmons, Jr., John T. Culotta, John E. Unsworth, Jr., Hailey McNamara Hall Larmann & Papale, Metairie, LA, for Louisiana Citizens Property Insurance Corporation.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge DAVID S. GORBATY, Judge ROLAND L. BELSOME).
DAVID S. GORBATY, Judge.
The instant appeal arises from a March 19, 2009 judgment approving a settlement and awarding attorney's fees in the Orrill class action. The fairness hearing on the proposed settlement was held December 15-19, 2008. The facts and events culminating in this appeal were recently chronicled in Orrill v. Louisiana Citizens Fair Plan, 09-0566, 09-0568 (La.App. 4 Cir. 12/09/09), 26 So.3d 994. We will reiterate the facts necessary to address the issues raised by appellants herein.
The issues presented for review are res nova; there is no case law to support either party's position, other than factors to consider at a fairness hearing. However, we must determine if the proposed *459 settlement in this case is fair in light of the existence of another active class action in another jurisdiction.

PROCEEDINGS BELOW:
This appeal involves three class action lawsuits. The captioned matter was filed in Civil District Court for the Parish of Orleans on October 2, 2005, and the class was certified June 6, 2008. A second class action entitled "Oubre v. Louisiana Citizens Fair Plan," was filed in the 24th Judicial District for the Parish of Jefferson on November 18, 2005, and the class was certified on July 17, 2006. A third class action was filed in the 34th Judicial District for the Parish of St. Bernard entitled Chalona v. Louisiana Citizens Property Ins. Corp. It is unclear from the record exactly when this case was filed, but one can derive from the judgment certifying the class that it was filed after the Oubre suit. Chalona was certified on January 25, 2008. As of this date, the remaining defendant in each lawsuit is Louisiana Citizens Fair Plan (Citizens). All lawsuits were filed in connection with alleged failings by Citizens to timely adjust claims and/or timely offer to settle claims following Hurricanes Katrina and Rita. For purposes of this appeal, and at the request of plaintiffs' counsel in both Orrill and Oubre, this Court has reviewed and considered the entire record filed in connection with 2009-CA-0566 c/w 2009-CA-0568 and 2009-CA-0888.
The Oubre class definition, which was affirmed by the Louisiana 5th Circuit Court of Appeal, is as follows:
All present or past insureds of Louisiana Citizens Property Insurance Corporation a/k/a LOUISIANA CITIZENS FAIR PLAN, hereinafter referred to as "LCPIC", who on or after August 29, 2005, provided notification of loss resulting from Hurricanes Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss.
The original class definition in Orrill signed on June 6, 2008, was:
All persons insured by or through the Louisiana Citizens' [sic] Fair Plan, and/or the Coastal Plan, underwritten, administered and/or serviced by any one or more of the named defendants, who sustained damages as a result of Hurricane Katrina to their covered personal and/or rental property and/or real property and improvements who have been unable to receive prompt adjustment within thirty days after notification of their loss, and/or who did not receive a written offer to settle within thirty days after receipt of satisfactory proof of loss of that claim, as provided by their policies of insurance.
Contemporaneously with the activities in Orrill, the Oubre case was moving forward in the 24th JDC, as was the Chalona case in the 34th JDC. Six months prior to certification of the class in Orrill, Judge Sullivan, the judge presiding over Oubre, approved the class notice, which advised:
At present, this class action covers no other claims of [sic] cause of action other than that clearly set forth in the class definition and effects no other pending litigation, individual and/or class action, brought in the Parish of Jefferson or any other parish which action is not in conflict with the class definition as set forth by this court.
If you have filed your own separate claim as a result of Hurricane Katrina or Rita against Louisiana Citizens which does not make a claim that Louisiana Citizens failed to initiate loss adjustment within thirty (30) days after notification of loss, you MAY maintain your own separate lawsuit AND be a member of this class.

*460 By remaining a class member, any claims against Louisiana Citizens for damages arising from their conduct as alleged by the class representatives will be determined in this case and cannot be presented in any other lawsuit.
At the same time these two above-referenced lawsuits were pending, the other class action, Chalona v. Louisiana Citizens, was pending in the 34th Judicial District Court for the Parish of St. Bernard. That court certified the class, and specifically noted and ruled:
This Court also takes note of the decision in and the class as defined in Oubre v. Louisiana Citizens Fair Plan, 961 So.2d 504 (La.App. 5th Cir., 2007). . . . The Court defined the class as `all present or past insured of Louisiana Citizens Property Insurance Corporation a/k/a LOUISIANA CITIZENS FAIR PLAN, hereinafter referred to as "LCPIC," who, on or after August 29, 2005, provided notification of loss resulting from Hurricane Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss.' The 5th Circuit Court of Appeal affirmed that decision and the Louisiana Supreme Court denied writs in the Oubre case, therefore there exists a maintainable class action in the 24th Judicial District Court of Jefferson Parish that inherently would include some potential class members of the class action at issue in the Chalona case. Additionally, the Oubre case was filed in Jefferson Parish before the Chalona case was filed in St. Bernard Parish. The Court takes note of the existence of Oubre, but must nonetheless render an appropriate judgment in the Chalona case. Accordingly, the defined class will exclude the members of the Oubre class unless they additionally did not have a written offer to settle within thirty (30) days after receipt of satisfactory proof of loss. . . . Therefore, the Chalona class will seek recovery for damages for a different alleged act than Oubre and will not duplicate any recovery. (emphasis added.)
On September 23, 2008, counsel for Citizens sent a letter to Orrill counsel, accepting a proposal of settlement. In addition to outlining the monetary details of the settlement, the letter stated[1]:
In consideration of the above, the Chalona and Orrill class members will execute a complete Release in favor of Louisiana Citizens, relative to any and all other claims of bad faith (pursuant to La. Rev. Stats. 22:658, 22:1220 and/or any other provisions of the law) which they have or may assert, and emanating out of the occurrence of Hurricanes Katrina and/or Rita, which Release specifically includes, but is not limited to, the claims which are being asserted in the Oubre matter.
An order was signed on October 1, 2008, whereby the notice of the proposed settlement in Orrill was approved, and dates were set to opt out of the class, to object to the settlement, and for a fairness hearing. The Notice of Proposed Class Settlement contained a new class definition, effectively discarding the previously certified class definitions in both Orrill and Chalona, and enlarging and expanding the class definition. The new class definition now included persons who were members or potential members of the Oubre class, the suit pending in the 24th Judicial District for the Parish of Jefferson.
The Stipulation of Settlement that accompanied the motion for approval specifically *461 states: ". . . there are pending in this, and other jurisdictions, the same or similar matters that contend to be class actions arising out of the same occurrence that was the subject matter of this litigation; and/or, in addition, are based upon the same cause or causes of action, involve parties in the same or similar legal capacity, and involve the same or similar evidence." The Stipulation further stated: "The parties herein acknowledge that this Compromise Agreement, that is entered between the parties to avoid further litigation, is favored by law, has a force equal to the authority of things adjudged and thus has res judicata effect, as per provisions of La. Civ.Code Art. 3078, including members of the class as found in the `class definition' below." [emphasis added]. The referenced definition is identical to the one found in the motion to approve the settlement.
On October 29, 2008, Judge Sullivan issued a temporary restraining order to Citizens restraining them 1) from processing any claim form by an Oubre class member (as per Oubre class definition); 2) from considering the absence of receipt of an "opt out" form to be a consent by an Oubre class member to be included in Orrill; 3) from taking any action to include, enforce and/or apply the Orrill settlement stipulation against any member of the Oubre class; 4) from filing pleadings in Orrill designed to fund the qualified trust account, and/or authorizing distribution of any funds from that account to Oubre class members; 5) from communicating with any Oubre class member; and 6) from participating in any fairness hearing in Orrill if the purpose of said participation is to seek to include, involve, affect, or impact on the Oubre class members.
Two persons, Daryl Roberts and Bruce Scharwath, objected to the settlement by filing written objections. They were in attendance at the fairness hearing on December 15, but did not testify. In their written objections the objectors noted that:
1. The failure to timely pay violation carries a penalty of $1,000, and could be difficult to establish, due to the potentially subjective and individualized issue of what specifically constitutes "satisfactory proof" of a given loss, as well as the likely requirement to make an independent showing that defendant had been "arbitrary" and "capricious". The failure-to-timely-initiate-loss-adjustment violation, by contrast, carries a $5,000 penalty, and can be proven through largely objective criteria, in many cases from Citizens' own records. Yet, under the Orrill Settlement, each class member gets $1,000, irrespective of whether he or she has a failure-to-pay claim, a failure-to-initiate-loss-adjustment claim, or both.
2. The notice was both procedurally and substantively defective. Over 8,000 notices were returned, and there was no effort to perform "skip tracing" or other accepted methods to locate these individuals. Substantively, the notice fails to advise of the existence of the Oubre class action, and the differences between and among the types of claims being pursued and purportedly compromised or released in the various cases. In addition, particularly given the dislocation of class members after Hurricanes Katrina and Rita, the time period for deciding whether to participate or opt-out was only 45 days (too short).
3. Class members with multiple claims on multiple policies and/or properties get the same amount as class members with only one property at issue.
Appellants presented expert testimony of Roy Amedee, Jr., who was accepted by the court as an expert in the field of class *462 action litigation and procedure. He addressed the defects identified by appellants, and additionally, the court's lack of jurisdiction over the failure to initiate loss adjustment claims previously certified by the 24th Judicial District Court in the Oubre class action. It was his opinion that by approving the proposed settlement, two separate causes of action were being settled for one sum. For example, persons who qualified as members of the Orrill class only because of Citizens failure to timely adjust their claims, would collect $1,000 instead of $5,000, which is the actual statutory penalty for failure to timely adjust. In Mr. Amedee's opinion, the settlement proposal did not provide due process for persons who had both types of claims. One of the main reasons for this opinion was that the settlement documents, including the notice, failed to mention the existence of the Oubre class action. This creates a due process issue for the persons who opted out of the Orrill class, but whose claims will now be settled because of the res judicata effect of the Orrill settlement.
The appellants also presented the testimony of Todd Hilsee, who the court accepted as an expert in communications and notice. He indicated that several elements for effective communication are necessary to comply with due process, specifically, reaching the class, designing a concise notice, presenting the information in a neutral way, and allowing adequate time for response. He also opined that it was a deficient notice not to have advertised the actual proposed settlement in local newspapers and other periodicals, especially in light of the hurricanes' impact on the potential class. Newspaper articles whereby a reporter gives a synopsis of the settlement are not sufficient because they tend to be confusing to the reader, and often, are not accurate. Mr. Hilsee also examined the Orrill notice in light of the existence of Oubre, and found the notice deficient because it failed to inform and explain that settling Orrill would have an effect on the Oubre case. However, the trial court disallowed any discussion of Oubre, thereby excluding a large portion of Mr. Hilsee's testimony. The bottom line of Mr. Hilsee's opinion was that the notice of the Orrill class settlement did not comport with due process requirements.
Attorneys for the Orrill class action presented the testimony of James Donelon, Commissioner of Insurance for the State of Louisiana. He testified that he attended various status briefings with Citizen's in-house counsel and was kept apprised of the status of active class actions against Citizens. He reiterated what he had told the media the week before the hearing, i.e., that he believed the settlement offer to be fair and equitable. It was his opinion that the settlement offer of $1,000 per claimant adequately compensated the "victims." He further opined that the overwhelming majority of the claimants would only be entitled to a maximum of $1,000. He stated that the "opt out" provision would allow those not happy with a $1,000 settlement to pursue their rights. In Mr. Donelon's opinion, the settlement adequately balanced the interests of the class members with that of Citizens, the current policyholders of Citizens, and all Louisiana citizens.
On cross-examination, Mr. Donelon stated that his role as commissioner was to protect policyholders, some of which were members of the purported class, and to protect other Louisiana policyholders who would be forced to pay for the losses incurred by Citizens.
Oscar McGee, who was a recent law school graduate, testified that he was a member of the Orrill class. In his opinion *463 the settlement offer was fair and in the best interest of the class. He also stated that if he opted out[2] he would have to hire an attorney to pursue his claims, costing him money. However, if he remained a member of the Orrill class, the settlement provided that class counsels' fees would be paid by defendants.
Toni Swain Orrill, a class representative, testified that the settlement was a "symbolic" way for the residents of Louisiana to move forward following the hurricanes of 2005. She also believed the settlement of $1,000 per claimant was fair, but admitted that she, as class representative, was to receive an additional $15,000. Ms. Orrill testified that she was unaware of any advertisements, town meetings, postings, or other means used to notify potential class members of the proposed settlement.
Dennis McCartney, an employee of Bourgeois, Bennett, the court-appointed claims administrator for the class, explained that it was his duty to send out notices of the proposed settlement, receive correspondence from potential claimants, including opt-out forms, and handle all other communications from potential class members. That information would then be captured in a database to be used for disbursement purposes. He advised that Citizens represented to him that they had already updated the database for last known addresses of policyholders. Bourgeois, Bennett then processed the list against the National Change of Address database. Ultimately, 60,940 notices were mailed; 8,386 were returned as undeliverable. Of those returned, a re-mailing was done of 1,253 notices. As of the day of the hearing, 12,058 claims had been processed, and of those, 2,415 claimants were mailed deficiency notices to obtain omitted information. His office received 609 "valid" opt-out forms; however, 782 opt-out forms were considered invalid because the names were listed in bulk by attorneys without individual claim forms, signatures, policy numbers or other required information set out in the notice. Mr. McCartney estimated that his firm would eventually receive a total of 15,000 claims.
Orrill counsel called Suzanne Dondeville, director of litigation for Citizens, who testified that if forced to trial, Citizens would present the defense of immunity to all statutory penalties. This defense was raised in Reed v. Louisiana Citizens Property Ins. Corp., 07-1592 (La.App. 4 Cir. 3/5/08), 980 So.2d 754.[3] Other potential defenses to the failure to timely adjust existed such as Citizens' inability to contact policyholders because of lack of telephone communication, or not being able to enter certain areas of south Louisiana due to flooding, lack of electricity, etc. Ms. Dondeville was also of the opinion that the failure to timely pay claims would eventually be decertified as a class because of the specific information needed to prove satisfactory proof of loss. Such proof was not amenable to a class action.
Ms. Dondeville testified that it was her duty to represent both the interests of Citizens and the citizens of the State of Louisiana. She based the latter on the fact that Citizens is funded with taxpayer money. Although she was aware of the negotiations going on between counsel for Citizens and Orrill counsel, she could not remember details. Much of what she was asked by counsel for Mr. Scharwath, was deemed protected by attorney/client privilege.
*464 Orrill counsel called Emile Rolfs, who was accepted by the court as an expert in class action litigation, practice and procedure. Mr. Rolfs stated that there is no statutory or jurisprudential provision that prevents a trial judge from redefining the constituency of the class or the issues to be maintained. The fact that another class action was pending in another jurisdiction had no bearing whatsoever on the Orrill trial court's authority to render judgment, dismiss or compromise the case. In his opinion the class notice of settlement was sufficient. On cross-examination he admitted that most recent cases of which he was aware had official websites, which this case did not. Also, cases in which he had personal involvement advertised the proposed settlement in the newspaper, which this case did not. Mr. Rolfs also admitted that there were other methods used in cases for which he was either an attorney or special master, where much more extensive means were used to locate potential class members.

STANDARD OF REVIEW:
In general, a district court's approval of a proposed settlement may not be overturned on appeal absent an abuse of discretion. See Reed v. General Motors Corp., 703 F.2d 170, 172 (C.A.Tex.1983). "The exercise of discretion is to be tested by inquiries that ensure that the settlement is in the best interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." Id., quoting Pettway v. American Cast Iron Pipe Co., 576 F.2d at 1214.

DISCUSSION:
As viewed by this Court, we must examine whether the re-definition of the class and the ensuing settlement adversely impacted the vested, substantive rights of persons who were actual or potential members of the Oubre case. In effect, the redefining of the class subsumed the Oubre class action. As stated infra, the Oubre class members were entitled to a potential recovery of $5,000 for each property covered by a Citizens' policy and damaged by Hurricane Katrina and/or Rita. The claims of the Orrill class were originally for $5,000 failure to timely adjust claims and/or $1,000 failure to pay claims, but only for Hurricane Katrina. When the class definition was enlarged pursuant to the proposed settlement, claims relative to Hurricane Rita were added.
As previously noted, the Oubre class was certified almost two years before the original class in Orrill was certified, and a class notice was approved and mailed. On November 13, 2008, the trial court issued a temporary restraining order prohibiting Oubre counsel from contacting any member of the newly defined Orrill class. On December 1, 2008,[4] this Court granted Oubre counsel's writ, holding that the Civil District Court could not enjoin the Oubre class-appointed attorneys from communicating with their clients. Despite our ruling, the trial court held a hearing and rendered judgment on December 22, 2008, issuing a preliminary injunction allowing Oubre counsel to contact their own class members/clients, but prohibiting them from contacting any Orrill class members. The problem created by this ruling was that the proposed settlement now included Oubre class members, whose attorneys were prohibited from contacting or counseling them. The Oubre attorneys appealed the granting of a preliminary injunction by the Orrill trial court, but this Court did not render an opinion on that appeal until December 9, 2009. The proposed settlement *465 in Orrill was approved March 19, 2009. Thus, during the time the settlement was being litigated, the Oubre class was not being represented by its appointed counsel.
The proposed settlement with its res judicata effect is essentially an end-run to settle all claims against Citizens without properly notifying the Oubre class members and without allowing the court-appointed Oubre attorneys to counsel their clients.
Herein lies the dilemma: An entire class of persons (Oubre actual or potential class members), were not allowed to be counseled by their court-appointed attorneys; the only attorneys from whom they could seek advice were the attorneys proposing the settlement; and, the impact of the settlement was that their claims in the Oubre class were compromised and settled, possibly without a clear understanding of that outcome.
The three issues presented for review are: 1) whether the settling class members were adequately represented; 2) whether the settlement is fair, reasonable and adequate; and, 3) whether the class notice complied with the requirements of due process. Based on our review of the evidence, the answer is no.
As we surmise, the first improvident action taken in this case was the expansion of the class definition. We are aware that La.Code Civ. Proc. art. 592 A(3)(c) permits a court to amend, alter, or recall any ruling on certification and may enlarge, restrict or otherwise redefine the constituency of a class. However, a court cannot enlarge a class to include persons, occurrences or causes of action, not present in the operative facts as set out in the underlying pleadings. Our review of the record convinces us that none of the petitions (original, first supplemental and amended, and second supplemental and amended) filed in Orrill contain operative facts to allow the trial court to expand the class definition. In other words, no claim resulting from Hurricane Rita or the specific pleading of former La. R.S. 22:658A(3) claims as a result of Hurricane Katrina are pled in any petition. Thus, we find it was error for the trial court to redefine and expand the Orrill class.
As outlined infra, many Citizens' policyholders were originally members or potential members of the Oubre class. A class notice had been court-approved and mailed. The opt-out period for the Oubre class had long since expired. Thus, the class was clearly established and counsel had been appointed to represent it. Suddenly, out of left-field, in our humble opinion, a new Orrill class was defined and approved in another court, with its own set of counsel. Those counsels proposing the settlement have a vested interest in settling the case. A notice was approved and mailed, but many notices never reached the intended mark. It is our opinion that the persons who were suddenly subsumed into Orrill settlement class did not receive adequate notice and were not adequately represented.
The first reason for this conclusion is that the method of notifying the newly defined class in Orrill was grossly deficient, especially in light of the devastation to the southern region of Louisiana, and the subsequent displacement of a vast majority of the residents in the region.
Proper notice is essential to a class settlement. See La.Code Civ. Proc. arts. 592 B and 594 A(2). The Manual for Complex Litigation, Fourth, § 21.3 instructs that a major concern in class actions is adequate communication between the court and counsel with the class. Appropriate means should be developed to provide information to, and obtain and *466 handle information and inquires from actual and potential class members. The federal committee noted that courts must "work unremittingly" to communicate with class members in plain language.[5]
Appellants' expert, Todd Hilsee, opined that the notice in this case was woefully inadequate in terms of what a qualified professional would use to actually inform the class of its rights and options. Numerous deficiencies are noted, not the least of which was only attempting to reach potential class members via U.S. mail. Also important was the notice's failure to explain "in plain language" what the res judicata effect would be on the Oubre litigation.
Appellees' expert, Emile Rolfs, admitted that in this day of modern technology it has become commonplace for the creation of a website to allow interaction and communication between the proposed settling class and counsel. Advertising the old-fashioned way, i.e., newspaper, is also common, especially when the class encompasses a broad geographical area.
The method of notice also creates a lack of meaningful representation for the class members. The Oubre counsel were prohibited from contacting their clients to explain the ramifications of the settlement. We venture to say that most lay persons do not know what res judicata means; thus, there is the potential that many interested persons did not realize that by not opting out of Orrill, their claims in Oubre would never be litigated and that they could potentially lose thousands of dollars.
This Court is also of the opinion that the settlement offer creates conflict among settling class members. The persons with failure to timely adjust claims are potentially entitled to the $5,000 penalty, whereas those with failure to timely pay claims are potentially entitled to a $1,000 penalty. Obviously the structure of this settlement provides that regardless of the claim, the most any claimant can receive is $1,000. Thus, some class members will be made whole, while others can not and will not.
It is irrelevant that the citizens of Louisiana will benefit from this settlement as explained by Jim Donelon. All of the citizens of Louisiana are not plaintiffs in this action. La.Code Civ. Proc. art. 594 B requires that the compromise be "fair, reasonable, and adequate for the class." In its finding that the settlement was fair, the trial court considered the effects on future Citizen's policyholders as well as all other Louisiana homeowners. Both Mr. Donelon and Ms. Dondeville testified that such a small payout to settle the case would prevent insurance rates from having to be increased. This fact, although alluring, is not one which should be considered in settling this class action.
This Court also finds it curious that Citizen's negotiated with Orrill counsel to settle all outstanding claims, when, at the time of the settlement negotiations, Orrill counsel did not represent all outstanding claimants (Orrill did not include failure to timely adjust claims for Hurricane Rita). It is also troubling that despite the ongoing negotiations with Oubre counsel, Citizen's did not disclose to Judge Sullivan that it was attempting to settle all claims with one fell swoop. Again, we are cognizant that Orrill and Oubre were being litigated in two different venues, however, candidness with a court is a benchmark of *467 ethical conduct. Counsel for Citizens was less than candid with the Oubre court.
For the foregoing reasons, we reverse the judgment of the trial court and vacate the settlement proposal. This case is remanded for further proceedings.
REVERSED; SETTLEMENT PROPOSAL VACATED.
MURRAY, J., Concurs in the Result.
BELSOME, J. Concurs with Reasons.
This writer is impressed with the efforts of the trial court to expeditiously resolve litigation that potentially impacts thousands of Louisiana citizens. While class action litigation has been the preferred procedural vehicle to facilitate claims that are too cost-prohibitive to litigate individually, there is currently no legislation in Louisiana to direct courts or litigators regarding an appropriate forum when potentially similarly situated claims are pending in multiple jurisdictions. The absence of such a procedure inevitably resulted in the impassioned appeal in the instant case.[1] The trial judge, faced with determining whether the settlement proposal in this first-filed class action was fair and reasonable, painstakingly and carefully considered multiple factors routinely considered by courts at fairness hearings. The trial court discussed the evidence and testimony introduced during the five-day fairness hearing, at which time the court heard testimony from three experts, class representatives, class counsel, several proponents of the settlement, and reviewed statements from the objectors.[2] After evaluating the extensive testimony and evidence, the trial court concluded that the settlement should be approved, and issued extensive and detailed Reasons for Judgment, addressing each and every issue raised by counsel for the competing class action. Although the trial court indisputably left no stone unturned in its deliberate and comprehensive Reasons for Judgment, as the majority notes, this judgment must be reversed. I reluctantly concur.
As the majority acknowledges, "[d]espite the law's predisposition in favor of settlements," a trial court's approval of a proposed class action settlement is reviewed under the abuse of discretion standard. Kent A. Lambert, Class Action Settlements in Louisiana, 61 La. L.Rev. 89, 127 (2000).[3] One reason that class action settlements are favored, by way of example, is that "[i]n Orleans Parish, the Civil District Court has seen on average more than 20,000 suits per year over the last decade with an upward trend." Id. at n. 7. As an inevitable result, "[e]ven one large class action suit . . . can forestall justice to literally thousands of litigants in these over-burdened state trial courts, as well as consume an inordinate amount of appellate *468 court resources." Id. (citing Dawn M. Barrios, The Long and Winding Road for Spitzfaden, Louisiana's Breast Implant Class Action: Ad Astra per Aspera, 74 Tul. L.Rev.1941 (2000)). Accordingly, class action settlements are the preferred means for the resolution of legal disputes, as "[c]lass action settlements offer obvious benefits to litigants and courts alike by providing a valuable mechanism for disposing of massive lawsuits that threaten to usurp huge amounts of resources and time." Lambert, supra, at 89. Settlements are also favored in class action litigation because settlement "afford[s] members of plaintiffs' classes with certainty in their recovery, while simultaneously providing class action defendants with the benefits of res judicata extended across an entire class of potential claimants." Id.
The Federal Judicial Center's Manual for Complex Litigation, relied upon by the federal courts presented with class action litigation, recognizes that a court's inquiry should involve consideration of whether the class as a whole is better served by settlement; put another way, the court must determine "whether the settlement is fair, reasonable, and adequate from the perspective of the affected class members." Id. at 100. The analysis will necessarily require the court to "be guided by the principal, perceived dangers posed by class action settlements," such as "infringement of the rights of absent class members who may not have had a sufficient voice during the settlement negotiations" and also "the possibility of collusion between the parties that actually negotiated the settlement." Id. This writer finds that the trial court exhaustively considered these factors, as well as notice, reach, due process, and a meticulous examination of the oft-cited Reed factors.[4]
In its Reasons for Judgment, the trial court first discussed the timeline: the action in the instant case was the first filed on October 6, 2005, and certified on June 6, 2008. Pursuant to a "Stipulation of Settlement" signed by the parties on October 1, 2008, the Court issued a Preliminary Approval Order on that date, directing issuance of a Notice to the Class, appointing a Claims Administrator, set the Fairness Hearing, and approved the Settlement Class definition. Finding that the class satisfied La. C.C.P. art. 592 requirements, the court directed notice of the Settlement Stipulation be sent to nearly 60,000 potential class members, with a deadline to object or opt out on December 11, 2008.
At the Fairness Hearing, the trial court heard testimony from the first of the class representatives, Oscar McGee. The court, in its Reasons for Judgment, "accept[ed] Mr. McGee's testimony as credible and reliable," and "was impressed" with his "thoughtful testimony and knowledge of the litigation and the issues."[5] The court relied upon Mr. McGee's opinion that the terms of the settlement were in the best interest of the class and accordingly, he recommended the settlement to all class members, "unequivocal[ly]" stating that the settlement was fair, considering the value of a settlement now weighted against the possibility of a verdict at trial; with regard to attorneys' fees, he testified that he understood the defendant would pay attorneys' fees, agreeing that 14.26% of the recovery should be paid to counsel attorneys.
Similarly, the trial court recognized Ms. Toni Swain Orrill's statement that the settlement *469 was fair and recommended it to all class members for at least three reasons: 1) it would allow them to move forward; 2) it was fair; and 3) it was in the interest of public policy to resolve the claims. The trial court further cited Ms. Orrill's testimony that the attorneys' fees were "well below what would normally [be demanded]." As the majority acknowledges, Ms. Orrill also testified that the settlement was a significant and symbolic way to allow Louisiana residents to move forward.
Testimony from Dennis McCartney, the Claims Administrator, was also cited by the trial court in its Reasons for Judgment. Mr. McCartney testified regarding notice, stating that the claims arising from the notice were nearly 18,000, suggesting that the class response to the notice was positive and that the class action procedure was the proper mechanism in this case. The trial court found that, pursuant to Louisiana lawwhich requires only that notice of dismissal or compromise be given to all class members so that absent members are allowed the opportunity to object or intervenethe validity of notice was verified, particularly since only two individuals[6] objected to the settlement, in comparison to the potential 18,000 who responded.
The trial court found that 60,940 notices were mailed; 12,058 valid claim forms were received; and only 609 valid opt-out forms were received. The trial court referenced Mr. McCartney's determination that the undeliverable notices were approximately 11%, within the normal range for class actions, and that nearly 15,000 potential policy holders had opted out by filing their own claims. Citing La. C.C.P. art. 594, the trial court acknowledged its authority to determine the manner in which notice should be given, and whether or not the notice was effective, noting that "[s]everal witnesses testified as to whether the notice given in this case was proper."
With regard to the notice issue, the court cited testimony of Todd B. Hilsee, presented by the objectors and accepted by the trial court as an expert in the field of communications and notice, who testified that he reviewed all the notices mailed, and discussed alternative methods used in locating class members, including publishing in the local newspapers or using web-based programs to determine whether mail actually reached the policyholder. The court, in its Reasons for Judgment, noted that Mr. Hilsee conceded that "problems with the notice were created by the intervention of counsel from a competing class action" and that Mr. Hilsee also "avoided discussion of the actual numbers which this court received in evidence from the claims administrator, Mr. Dennis McCartney."
The court also acknowledged Roy Amadee, who was also presented by the objectors and accepted by the court as an expert in the field of class action procedure and litigation, and who testified that, in his opinion, the settlement merged two separate causes of action and that the settlement of $1,000 per claimant was too low. However, the trial court noted that Mr. Amadee "admitted that there is uncertainty in all litigation and that settlements are favored in the law." The trial court also *470 relied upon testimony from Emile Rolfs, an expert in class action practice and procedure, found that La. C.C.P. art. 592 was satisfied, as "the notice must be `desirous for those to receive it and must use the best method practicable.'" Mr. Rolfs further testified that the evidence that only 10-11% of the notices were returned indicated that the notice comported with due process. Most significantly, the trial court recognized that "no expert testified that the notice sent in this case failed to comply with La. C.C.P. art. 592," and "all [experts] agreed that the controlling article on class action notice is La. C.C.P. art. 592."
After concluding that the notice comported with due process requirements, the court turned to whether the proposed settlement was fair, first applying the "Reed Factors," six factors employed by the court in Reed v. General Motors Corporation, 703 F.2d 170, 172 (5th Cir.1983). The six factors "to ensure that the settlement is in the best interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression,"[7] are:
(1) the existence of fraud or collusion behind the settlement;[8] (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.
Reed, 703 F.2d at 172 (citing Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982)). The trial court also assessed the fairness of the proposed settlement with comprehensive factors from Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir.1975). The nine Girsh factors, cited repeatedly in class action cases, are as follows:
"`(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'"
In re Insurance Brokerage Antitrust Litigation, 579 F.3d 241, 258 (3d Cir.2009) (quoting Girsh v. Jepson, 521 F.2d at 156).[9] In considering these factors, "the *471 court must reach `an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated' based upon `an educated estimate of the complexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" Lambert, supra, at 112 (quoting Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968)). The court found that pursuant to both Girsh and Reed, the settlement was fair, reasonable, and adequate.

Complexity, Expense and Likely Duration of the Litigation
Applying the Girsh and Reed factors, the trial court first addressed the issue of the costs involved with proceeding to trial, conducting discovery, hiring expert witnesses, finding that litigation of claims "would be time-consuming, uncertain and expensive," and that this factor weighed heavily in favor of settlement.

Reaction of the Class to the Settlement
The trial court noted that the instant case was the first filed of seventeen similar class actions, and that class counsel successfully certified two other classes for similar causes of action in other Louisiana courts; therefore, the court concluded that class counsel, who had conducted discovery and consulted experts "had an adequate appreciation of the merits of the case," the value of the settlement, and the risk of litigation prior to negotiating the settlement. The court found that this factor also weighed heavily in favor of settlement.

The State of Proceedings and the Amount of Discovery
Again, the court recognized that the instant case was the first filed, and that one of the two other class actions in Louisiana filed by class counsel, Chalona, et al v. Louisiana Citizens Property Insurance Corporation, XXXX-XXXX (La.App. 4 Cir. 6/11/08), 3 So.3d 494, was subsumed by Orrill. Considering the extensive discovery, motion practice and pending litigation involving not only comparable claims but also the same defendant, and "the amount of time expended in negotiations and the extent of the discovery process," the trial court found that class counsel plainly "had a thorough appreciation for the merits of the case prior to settlement."

The Risks of Establishing Liability and Damages
The court noted that this inquiry involves a weighing of the likelihood of success and the possible disadvantages of going to trial as opposed to the benefits of settlement. Put another way, the court determined that "the risk is whether there should be an individual determination of each class member's file to determine if *472 indeed the class member can establish their damages," because an individual determination would indisputably "put the entire class action procedural device at risk." The court found that this factor weighed strongly in favor of settlement.

The Risks of Maintaining the Class Action Through Trial
The trial court cited Reed v. Louisiana Citizens Property Insurance Corporation, (La.App. 4 Cir. 3/5/08), 980 So.2d 754 as a risk that class certification might not be maintained through trial. At that time, the Louisiana Supreme Court had not ruled upon this Court's determination that Citizens was not immune from penalties; however, the Louisiana Supreme Court has since denied writs in Reed. Reed v. Louisiana Citizens Property Ins. Corp., XXXX-XXXX, XXXX-XXXX (La.10/24/08), 25 So.3d 777.[10]

The Ability of the Defendants to Withstand Greater Judgment
The defendant, Citizens, deposited the total funds available, $35,000,000.00, in the registry of the court. Although Citizens did not appear to be in danger of developing financial problems, the trial court found that "to withhold approval of a settlement of this size because the defendants could withstand a greater judgment would make little sense."[11]
In its Reasons for Judgment, the trial court also considered this factor in light of testimony from the Insurance Commissioner of the State of Louisiana, Jim Donelon, who was accepted by the court as an expert in the field of insurance and insurance regulation. The trial court noted that Mr. Donelon testified regarding losses that produce claims which exceed cash flow, causing all insurance companies with policies in Louisiana to be assessed part of the loss. Likewise, when a settlement is reached that exceeds cash flow, individual policyholders may benefit; however, because funding for Louisiana Citizens is comprised of all citizens of Louisiana, not merely policyholders, the settlement would effectively be funded by all citizens of the State of Louisiana. The trial court further cited Mr. Donelon's testimony that the present proposed settlement did not exceed cash flow and could thus be disbursed without the necessity of assessing a shortfall to all policyholders in Louisiana; therefore, the settlement compensated the majority of victims adequately, particularly considering the opt-out provision for individuals who wished to file suit.

The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation
Considering these final factors, the trial court referenced the testimony and evidence that if a settlement of more than $1,000 per class member were reached, the costs would be assessed to policyholders themselves or all Louisiana policyholders. The court cited In re Cendant Corp. Sec. Litig., 109 F.Supp.2d 235, 263 (D.N.J.), noting "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Rather, "[t]he percentage recovery [] must represent a material percentage *473 recovery to plaintiff in light of all the risks considered under Girsh." Id.

La. C.C.P. art. 595
The trial court then turned to La. C.C.P. art. 595 in its Reasons for Judgment, applying the facts of the case to the factors a court to consider when awarding fees. The court considered the size of the fund created and the number of persons to benefit;[12] the presence or absence of substantial objections received by members of the class to settlement terms and/or fees requested by counsel;[13] the skill and efficiency of the attorneys;[14] the complexity and duration of the litigation;[15] the risk of non-payment;[16] the amount of time devoted to the litigation;[17] awards in similar cases;[18] and incentive awards for named plaintiffs/class representations.[19] Considering each of these factors in detail, the court found that $5,000,000.00 in fees to class counsel, as well as the settlement of *474 $30,000,000.00 for class members, including a future separate amount in costs, "represent[ed] an excellent result for the Class considering the substantial risks that Plaintiffs face."
It is readily apparent that, in determining whether the proposed settlement was fair, reasonable, and adequate, the trial court appropriately "devote[d] the majority of [its] attention to determining the size of the settlement viewed against the risks of litigation." Lambert, supra, at 114. "It is indeed the rare settlement that offers the plaintiff class everything it could reasonably have expected to recover had the case gone its way at trial." Id. Pursuant to this analysis, "this inquiry tends to degenerate into scrutiny of the plaintiffs' chances of prevailing, with the court attempting to look behind the business judgment of the negotiating parties to test the soundness of the fruit of their efforts-all without purporting to decide the merits." Id. Considering the role of class counsel, "court[s] must be cognizant of the fact that these attorneys may not share the same agenda as the court." Id. Accordingly, "[i]f the court perceives significant risks against ultimate success, then a modest settlement offer may appropriately be considered fair, reasonable, and adequate." Id. This writer respectfully submits that this is precisely the process employed by the trial court's detailed analysis in the instant case.
Nevertheless, despite the trial court's detailed and thorough analysis, careful consideration, and sound logic, the court's articulate and well-reasoned decision regarding this first-filed litigation cannot stand. No matter how correct and just, the competing, and potentially overlapping, claims in other jurisdictions destined the trial court's judgment in this case to be invalidated. As previously noted herein, the lack of procedural guidelines for multi-parish litigation at the time the trial court considered this matter evidences precisely the type of injustice for citizens in multiple parishes of Louisiana that can result from such a significant omission of procedures and safeguards.
Finally, this writer finds that the current procedural posture of this matter could have been avoided by simply filing a motion to transfer and consolidate the matter to the first filed action, and by removing apparent personality conflicts from what should have been litigation focused solely upon the best interests of the insureds of Louisiana who suffered great losses from Hurricanes Katrina and Rita.
NOTES
[1] At the time this letter was sent, the Chalona lawsuit had not been dismissed. It was not dismissed until October 1, 2008, when Judge Buckley granted an exception of lis pendens.
[2] At the time of the hearing, the "opt out" date had passed.
[3] This Court rejected Citizens' assertions of immunity in the Reed case. Citizens appealed to the Louisiana Supreme Court; however, it later withdrew the appeal.
[4] 2008-C-1468
[5] The Court is aware that multi-district litigation standards have not been adopted in Louisiana. However, because our class action substantive and procedural laws closely follow the federal law, we rely on the manual for guidance.
[1] Duplicative, competing class actions have generally presented conflict between federal and state courts. See Matsushita Electric Industrial Co., Ltd., 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); In re Prudential Ins. Co. of America Sales Practices Litigation, 314 F.3d 99, 106 (3d Cir.2002)(noting that "in the modern era of civil litigation, there has been a sea [of] change in the nature of complex litigation involving class actions and the aggregation of individual cases and also in the complex relationship between federal and state jurisdiction, especially regarding duplicative and competing class actions" and "the problems arising from duplicative or competing nationwide class actions applying the laws of particular states to passive litigants in other states are evident").
[2] None of the objectors testified at the fairness hearing.
[3] (citing Maywalt v. Parker & Parsley Petr. Co., 67 F.3d 1072, 1078 (2d Cir. 1995); DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1176-77 (8th Cir. 1995); and In re Corrugated Container Antitrust Litig., 643 F.2d 195, 218 (5th Cir.), affd by 659 F.2d 1337 (5th Cir. 1981)).
[4] Reed v. General Motors Corporation, 703 F.2d 170 (5th Cir. 1983).
[5] As the majority notes, the trial court acknowledged that Mr. McGee was a military veteran and the recent recipient of a law degree.
[6] The trial court also noted that neither of the two objectors testified at the hearing, "but [] voiced their objections through counsel from a competing class action." These two objectors, Daryl Robert and Bruce Scharwath, asserted that the settlement provides only one recovery for two groups of claimants; those who claim late payment have a claim for $1,000, while those individuals claiming late adjustment seek $5,000. The other two objectors, Allen and Monica Markey, filed an Amicus Objection and Notice of Intent to Appear; however, neither objector nor their counsel appeared at the fairness hearing.
[7] Reed v. General Motors Corporation, 703 F.2d 170, 172 (5th Cir. 1983)(quoting Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1214 (5th Cir. 1978)).
[8] With respect to the Reed factors, the trial court acknowledged Suzanne Dondeville's testimony regarding the lack of any fraud or collusion during settlement negotiations in its Reasons for Judgment. Ms. Dondeville, the Director of Litigation for Louisiana Citizens, testified that she was not aware of prior relationships between counsel, and that the negotiations were arms length and occurred over the course of three to four days. Additionally, with respect to notice, Ms. Dondeville testified that the database of policyholders provided to the claims administrator included all policyholders, regardless of whether a claim was made for Hurricane Katrina or Rita damages. Finally, with regard to the complexity, expense, and duration of the litigation, Ms. Dondeville testified that the defense costs of litigation to Citizens was $5,000 to $6,000 per week and that resolution of the claims would benefit all parties.
[9] In undertaking this difficult analysis, the federal courts have identified a myriad of factors that, under the particular circumstances of a given case, may bear upon the appropriateness of approving a proposed class-action settlement. These include: (1) "the complexity, expense, and likely duration of the litigation"; (2) the reaction of the class members to the proposed settlement, including the number of objectors; (3) the "reasonableness" of the consideration offered to the class in light of the best possible recovery if the case were litigated, with appropriate allowances accounting for the risks of establishing liability and damages, and for other potential contingencies during litigation; (4) the defendant's ability to withstand a judgment affording a greater recovery; (5) the possibility of whether insurance proceeds have buttressed the consideration offered to the class and, if so, whether there is a risk that litigating the class's claims could result in a denial of recovery (and what effect this would have upon the defendant's ability to satisfy an adverse judgment); (6) the practical merit of the proposed plan of distribution; (7) the impact the settlement may have upon other rights or claims of the class members against the defendants; and (8) the views of class counsel.

Lambert, Class Action Settlements in Louisiana, 61 La. L.Rev. at 112-113 (citations omitted).
[10] Although the denial of writs in Reed v. Louisiana Citizens Property Insurance Corporation, (La.App. 4 Cir. 3/5/08), 980 So.2d 754, is dated October 24, 2008, due to a clerical error, the decision was not released to the parties by the Louisiana Supreme Court until December 17, 2009.
[11] (quoting In re Automotive Refinishing Paint Antitrust Litig., MDL No. 1426, 2004 U.S. Dist. LEXIS 29161, at *22 (E.D.Pa. Sept. 27, 2004)).
[12] The trial court found that, in recovering a common fund for the benefit of the class, with Citizens' agreement to pay attorneys' fees, class counsel "was able to obtain the significant result of $30,000,000.00, plus notice and administration costs, attorney's fees and reimbursement expenses up to $200,000.00, despite the substantial risks of establishing liability and damages." The court also noted that "a significant number of people are expected to benefit from this award considering the expected 18,000 claim forms, of which more than 13,000 have already been received."
[13] As previously noted herein, and as acknowledged by the trial court with respect to this inquiry, "[t]here were only two (2) objectors to the settlement, both of whom never gave testimony and were at all times represented by counsel for a competing class action."
[14] The trial court found that class counsel and counsel for Citizens were both represented by highly skilled attorneys.
[15] As previously discussed, the trial court reiterated that class counsel had engaged in "extensive discovery and motion practice," and that the matter "involved the complexities of measuring damages, establishing classwide liability, and monitoring closely the ever changing property damage jurisprudence," resulting in "a costly and lengthy process for all the parties" to litigate.
[16] Because class counsel was employed on a contingency fee basis, "without any guarantee of success or award," the trial court found that "this factor weighs heavily in favor of approval of the fees and costs negotiated by the settling parties."
[17] As one of seventeen similar actions against Citizens, the trial court found that "class counsel demonstrated in this court by motion practice alone that a very significant portion of their time for the past 3+ years was devoted to the prosecution of this case." Additionally, the court acknowledged the record of over twelve volumes, the "highly contested nature of the litigation," as evidence that "an exorbitant amount of time has been devoted to this cause."
[18] The trial court considered "comparison of the actual award requested to other awards in comparable settlements" and also made great efforts to "ensure[] that the awards [were] consistent with what an attorney would have received if the fee were negotiated on the open market." Therefore, the court concluded that costs of $200,000 and the negotiated fee of $5 million, or 16.7% of $30,000,000.00, was reasonable, as "[f]ederal courts often award fees of 25% to 33 1/3% of the recovery." (citing In re Remeron Direct Purchaser Antitrust Litig. No. 0300085, 2005 WL 3008808 at *15-16, 2005 U.S. Dist. LEXIS 27013 at *44 (D.N.J. Nov., 2005)). The court also cited three cases in which a court in the same judicial district awarded class counsel 40% of the total recovery. (citing Waters, et al. v. Louisiana Department of Social Services, et al., No. 2001-17775, 2003 WL 25802326 "J", writ denied, XXXX-XXXX, (La. 10/30/09), 21 So.3d 291; Brown, et al. v. Credit Suisse First Boston Corp., et al., No. 2002-13738 "A"; and Powell, et al v. Credit Suisse First Boston Corp., et al, No. 2004-11069 "A").
[19] Incentive awards in this case for the class representatives were $15,000.00 each for a total of $5,000.00, amounts negotiated by the parties. The trial court recognized that the testifying class representative stated that "a significant amount of their own time and expense litigating these cases over three (3) years for the benefit of absent members of the settlement class" was expended, and that this amount was uncontested by Citizens at trial. Accordingly, the trial court approved the payments for the class representatives on this basis.